**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

E-NOMADS SRL

                         Plaintiff,

v.                                     Case No.: 2:21-cv-337

LINGXIAN (GUANGZHOU )
TECHNOLOGY CO., LTD.

                         Defendant

**MEMORANDUM IN SUPPORT OF MOTION**

**<u>FOR ENTRY OF DEFAULT JUDGMENT</u>**

**Contents**

Summary of the Procedural History ............................................................... 4

The Parties ..................................................................................................... 5

Summary of the Facts ..................................................................................... 5

   1.  The '252 Patent ..................................................................................... 5

   2.  The Accused ENS Products ................................................................. 10

Argument ...................................................................................................... 11

   1.  Legal Standards ................................................................................. 11

   2.  The ENS Products Do Not Infringe the '252 Patent .............................. 13

   3.  The '252 Patent is Invalid .................................................................. 14

   4.  Lingxian Acted in Bad Faith and Targeted ENS ................................... 16

Conclusion .................................................................................................... 17

**Cases**

*Campbell Soup Co. v. Gamon Plus, Inc.*, No., 2020-2344, 2021 WL 3671163 (Fed. Cir. Aug. 19, 2021) ........................................................................... 12

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008).............. 12

*G.P. Industries, Inc. v. Eran Industries, Inc.*, 500 F.3d 1369 (Fed.Cir. 2007) .... 13

*Globetrotter Software v. Elan Computer Group*, 362 F.3d 1367 (Fed.Cir. 2004) 13

*Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233 (Fed. Cir. 2009) ...................................................................................................................... 11

*KSR Intern. Co. v. Teleflex Inc.*, US 550 US 398, 420 (2007) ........................... 15

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975) .. 4

*Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334 (4th Cir. 2006)..... 4

*Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ...................................................................................................................... 13

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778 (4th Cir. 2001) ................... 4

Plaintiff, E-Nomads SRL ("ENS"), by its counsel, respectfully submits this memorandum in support of its co-filed Motion for Entry of Default Judgment.

**Summary of the Procedural History**

On June 15, 2021, ENS filed its complaint for a declaratory judgment that US Design Patent No. D884,252 is invalid, that the accused ENS products did not infringe, and that ENS had a business expectancy with Amazon that had been harmed by a series of false infringement allegations that had been filed by Lingxian with Amazon which resulted in periods of suspended selling privileges for the accused products. (ECF 1.)

On June 25, 2021, ENS moved for authorization to service the complaint by publication as authorized by 35 USC 293. (ECF 9.) That motion was granted on June 30, 2021. (ECF 10.)

On August 2, 2021, plaintiff filed proofs of service by publication (ECF 15) as authorized by the court (ECF 10). Subsequent email communications confirmed that Defendant had actual notice of this case (ECF 17-1).

Defendant did not file a response to the complaint, and no counsel has filed an appearance on behalf of Defendant.

The clerk entered a default on September 2, 2021 (ECF 21).

By defaulting, the defendant admits the plaintiff's well-pled allegations of fact, which then provide the basis for judgment. See *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006).

Here, as the defendant has not answered or otherwise timely responded, the well-pled allegations of fact in the Complaint are deemed admitted.

## The Parties

ENS is a Romanian company with a business selling textured globe lamps in the Amazon marketplace under its MIND GLOWING brand. Two of its primary products are the 3D Moon Lamp™ and the 3D Galaxy Lamp™ which are sold in various sizes. (ECF 1 at ¶¶ 6, 11, and 12; ECF 17-5 at ¶¶ 1-2.)

Lingxian (Guangzhou) Technology Co. Ltd. ("Lingxian"), is a Chinese company and the owner of US Design Patent No. D884,252 ("the '252 patent"). Because Lingxian has not identified an agent for service of process in the United States in connection with the '252 patent, 35 USC 293 provides this court with personal jurisdiction over Lingxian. (ECF 1 at ¶¶ 7-8.)

## Summary of the Facts

1.  The '252 Patent

US Design Patent Number D884,252 is entitled "3D Printed Moon Lamp", was filed on July 10, 2018, and issued on May 12, 2020. (Exhibit 1.)



| Table 1 – US D884,252 | | | |
|---|---|---|---|
| FIG. 1 <br> Fig. 1 | FIG. 2 <br> Fig. 2 - Front | FIG. 3 <br> Fig. 3 - Rear | FIG. 4 <br> Fig. 4 - Right |



| Table 1 – US D884,252 | | | |
|---|---|---|---|
| Fig. 5 - Left | Fig. 6 - Bottom | Fig. 7 - Top | |

The figures of the '252 patent show a spherical lamp on a base with a recharging port on the bottom for the internal battery. These figures do not show any surface features or ornamentation on the outside of the globe.

During the examination of the '252 patent, the examiner cited a single design patent to Pan US D849,314 (Exhibit 2) that is identical to the '252 patent design but for: (a) a zigzag base that is somewhat larger than the diameter of the globe; and (b) an underside that has a battery compartment door and a  set of switches. Based on these differences, the examiner allowed the '252 patent without comment or explanation.

 A comparison between the Pan design compared to the '252 patent design is shown in Table 2.

Table 2

| US D884,252 | Pan US D849,314 |
|---|---|
| Perspective | Fig. 1 - Perspective |

6

| US D884,252 | Pan US D849,314 |
|---|---|
| Rear | Fig. 2 - Front |
| Front | Fig. 3 - Back |
| | Fig. 4 - Left |
| | Fig. 5 - Right |
| Top | Fig. 6 - Top |
| Bottom | Fig. 7 - Bottom |



7

A review of the prior art to the '252 patent reveals that three patents

issued in Europe and China that depicted textured, spherical, lamps on a

small zigzag, and a single charge port on the bottom. See Table 3 below.



| Table 3 | |
|---|---|
| Wang Patent (Exhibit 3)<br>EUIPO RCD 004393957-0001<br>Published 17 October 2017<br>Designer: Gang Wang | Luo Patent (Exhibit 4)<br>EUIPO RCD 005138302-0001<br>Published 4 May 2018<br>Designer: Xi Luo |
| Chen Patent (Exhibit 5)<br>CN304573735S<br>Published 6 April 2018<br>Inventor: Jianjun Chen | |

The globe lamps that are prior art to the '252 patent include textured

outer surfaces, a single charging port on the bottom, and a small zigzag

support base. Only a smooth outer surface is any point of novelty between the '252 patent and the prior art.

The '252 patent is currently the subject of three pending, ex parte reexaminations: Control Nos. 90/014,589; 90/014,617; and 90/014,719. (ECF 1 at ¶15.) Representations made by the Lingxian in an Owner's Statement in pending reexamination 90/014,617 (ECF 1 at ¶ 62) asserted that the scope of the '252 patent is limited to a smooth, unadorned, globe-shaped lamp (emphasis supplied):

> All of the cited references show a sphere with possible lumps and indentations mimicking lunar craters and other landforms on moon. However, nothing in the references discloses or suggests **a sphere with a smooth surface without any patterns in a minimalistic ornamental design as claimed in the '252 patent**. Thus, at least this claimed feature is not found in the cited references.

The examiner in the '617 reexamination agreed with Lingxian's proffered claim scope limitations in the office action dated August 6, 2021, namely, that the '252 patent covered a lamp design having only a "smooth surface." (ECF 17-4 at p. 4.)

Lingxian has filed and re-filed multiple complaints with Amazon through its automated IP infringement reporting system asserting that the Accused ENS products infringe the '252 patent. Those complaints were filed on September 15, 2020 (complaint ID 7385152351*), October 21, 2020 (Complaint IDs 7516446651** and 7516453831***), April 29, 2021 (Complaint ID 8281066791), May 10, 2021 (Complaint IDs 7516453831***, 7385152351*, and 7516446651**), August 6, 2021 (Complaint ID 8683992081), and August

8, 2021 (Complaint IDs 8688840151 and 8688802391). (ECF 17-7.) Each complaint was made under penalty of perjury. (Exhibit 7, from https://www.amazon.com/report/infringement last visited 9/21/2021.)

Seven of the nine complaints filed or re-filed by Lingxian were done after it argued to the USPTO for a claim construction limiting the '252 patent to a smooth outside surface without ornamentation. Three of those were filed or re-filed after the USPTO had adopted a smooth surface claim construction for the '252 patent. (Compare ECF 17-7 with ECF 17-3 and 17-4.)

Amazon has established a website for reporting infringement of patents, copyrights, and trademarks at https://amzn.to/3gcS78P. (ECF 1 at ¶39.)

Amazon's current system for acting on patent infringement claims are believed to be performed by automated programs. A sufficiently close design is deemed to be an infringement and the seller's listing is deactivated with little or no human evaluation. Accordingly, false claims of IP infringement made to Amazon are well known and widely abused. (ECF 1 at ¶¶ 41-42.)

After each of these complaints were filed or re-filed, Amazon deactivated the accused listings. These periods of listing deactivation caused ENS to lose sales of $ 1,176,400. (Exhibit 6 at ¶6.)

2. The Accused ENS Products

Each of the product models sold by ENS has a base of connected wooden segments ("zigzag base") supporting a globe-shaped lamp having a textured outer surface having surface features designed to simulate a lunar surface. (ECF 1 at ¶12.) The 3D Moon Lamp™ is white. The 3D Galaxy Lamp™ has

colored and dark areas. Both have the same type of external surface features. (ECF 17-5 at ¶2.) See Table 4 below.

Table 4 – The Accused ENS Products



| Side view | Bottom view | Top View |
| --- | --- | --- |

The sales of these lamps constitute 99% of its total sales. (ECF 17-5 at ¶1.)

**Argument**

1. Legal Standards

The test for infringement of a design patent is the "ordinary observer" test. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) ("In light of Supreme Court precedent and our precedent holding that the same tests must be applied to infringement and anticipation, and our

holding in *Egyptian Goddess* that the ordinary observer test is the sole test for infringement, we now conclude that the ordinary observer test must logically be the sole test for anticipation as well.")

Under the "ordinary observer test, infringement will not be found unless the accused article embodies the patented design or any colorable imitation thereof." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). An understanding of the prior art can help identify the ornamental features of the patented design that differ from the prior art and the degree of those differences. See *Id.* at 677 ("An ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design.")

The test for validity of a design patent slightly changes perspective and uses the "ordinary designer" test. As explained in *Campbell Soup Co. v. Gamon Plus, Inc.*, No. 2020-2344, 2021 WL 3671163, at *3 (Fed. Cir. Aug. 19, 2021) (citations omitted; emphasis supplied):

> "In the design patent context, we address the first three Graham factors by determining whether a designer of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design. This inquiry proceeds in two steps. First, before the trier of fact can combine prior art references, it must determine whether there exists a primary reference, i.e., a single reference that creates 'basically the same visual impression' as the claimed design. To be basically the same, the designs at issue cannot have substantial differences in their overall visual appearances or require major modifications; any differences must instead be slight. This is a question of fact. Second, if a primary reference exists, **the trier of fact must determine whether, using secondary references, an ordinary**

**designer would have modified the primary reference to create a design that has the same overall visual appearance as the claimed design**. This, too, is a question of fact."

Bad faith is a defined term of law. As noted in *G.P. Industries, Inc. v. Eran Industries, Inc.*, 500 F.3d 1369, 1374 (Fed.Cir. 2007) (emphasis added):

> The Supreme Court elaborated on the meaning of "objectively baseless," explaining that "the lawsuit must be objectively baseless in the sense that **no reasonable litigant could realistically expect success on the merits."** *Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Although the Professional Real Estate case involved an antitrust action, we have expressly applied the "objectively baseless" standard to a situation in which the party challenged statements made in cease-and-desist letters by a patentee asserting its patent rights. [*Globetrotter Software v. Elan Computer Group*, 362 F.3d 1367, 1377 (Fed.Cir. 2004)]. We stated that a "plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless."

2.  The ENS Products Do Not Infringe the '252 Patent

As discussed above, the reexamination proceedings and the images of the '252 patent show that the patented design is limited to globe lamps that use a "smooth sphere" that are "without surface ornamentation." The Accused ENS products have surface ornamentation and are not smooth. Accordingly, they cannot be deemed to infringe the '252 patent.

| The '252 Patent | Pan US D849,314 | The Accused Products |
|---|---|---|
|  | | |

### 3. The '252 Patent is Invalid

As discussed above, the three prior art patents in Table 3 (Wang EUIPO RCD 004393957-0001, Luo EUIPO RCD 005138302-0001, and Chen CN304573735S) all show globe lamps having all of the features of the '252 patent but for a smooth outer surface. During the original prosecution, however, the examiner cited Pan US D849,413 which shows a globe lamp having a smooth outer surface.

14

| The '252 Patent | | Pan US D849,314 |
|---|---|---|
|  | | |

The prior art shows that globe lamps have a very limited number of possible design options, namely, the outer surface of the globe can be textured (as in Wang, Luo, or Chen from Exhibits 3-5) or smooth (as in the Pan patent of Exhibit 2). In such a case, the substitution of a smooth sphere for a textured sphere would have been obvious to the ordinary designer in this area. See *KSR Intern. Co. v. Teleflex Inc.*, US 550 US 398, 420 (2007) ("When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to

pursue the known options within his or her technical grasp."). Accordingly, the '252 design is invalid for obviousness under 35 USC 103.

If the scope of the '252 patent is somehow entitled to a breadth sufficient to encompass a textured globe surface, then there is no difference between such a claim and any of the three prior art patents listed in Table 3. In other words, the '252 patent would lack novelty over any of Wang EUIPO RCD 004393957-0001, Luo EUIPO RCD 005138302-0001, and Chen CN304573735S under 35 USC 102. (See ECF 1 at ¶¶ 44-46.)

4. Lingxian Acted in Bad Faith and Targeted ENS

Lingxian knew by September 15, 2020 that the ENS 3D Moon Lamps and 3D Galaxy Lamps had an external surface texture mimicking that of the moon. Nonetheless, Lingxian filed seven complaints against ENS after it had asserted to the Patent Office that its '252 patent did not cover textured globe lamps. Three of those complaints were filed after the Patent Office agreed with Lingxian that its '252 patent was limited to globes with a smooth surface.

No reasonable litigant would have expected to succeed on its broad allegations of infringement of the '252 patent in a human-based enforcement action. The actual images in the '252 patent and the subsequent admissions regarding claim scope would have foreclosed any reasonable expectation of success.

In the automated Amazon IP Infringement Reporting process, however, humans are not involved. Claims of design patent infringement are presumed to be true and automatically result in listing deactivation (see ECF 1 at ¶¶ 39-

16

42) despite the significant legal issues that attend the proper construction of the scope and validity of design patents.

Only by this automated method was Lingxian able to shut down sales by ENS. Lingxian did this in September 2020 and then again even after Lingxian knew that the '252 patent could not encompass textured globes of the ENS product by its own arguments and the examiner's construction.

The conclusion is inescapable that Lingxian used the automated Amazon system to prevent ENS from selling its textured globe lamps with objectively false and baseless claims of infringement. These actions directly interfered with the business relationship between ENS and Amazon under the terms of its publicly available Business Solutions Agreement and the expectancy that ENS had from its sales. (See ECF ¶¶ 53-66.) As a result, ENS was harmed in the amount of $1,176,400. (Exhibit 6 at ¶ 6.)

5.  An Injunction Is Warranted for Protection of a Judgment

To safeguard the ability of ENS to recover the damages that this court might award, this Court should enjoin the online marketplaces where Lingxian does business from dispersing money or assets that might be used to satisfy a monetary judgment awarded by this Court.

**Conclusion**

Plaintiff respectfully requests entry of a default judgment and an Order enjoining any online marketplaces from dispersing money or assets held in the name of Defendant that might be used to satisfy an award by this Court.

Dated: September 24, 2021

Respectfully submitted,

/s/Lance G. Johnson
Lance G. Johnson, VA 27929
Johnson Legal PLLC
12545 White Drive
Fairfax, Virginia 22030
(202) 445-2000
Docketing@lgjlegal.com

*Attorney for Plaintiff*